**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sandra Thomas, | No. CV-20-00382-TUC-RM |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Sandra Thomas brings this action seeking review of the final decision of the Commissioner of Social Security ("Commissioner") pursuant to 42 U.S.C. § 405(g). (Doc. 1.)  On February 9, 2022, Magistrate Judge D. Thomas Ferraro filed a Report and Recommendation ("R&R"), recommending that this Court affirm the Commissioner's final decision.  (Doc. 26.)  Plaintiff filed a timely Objection (Doc. 27), and the Commissioner filed a Response to Plaintiff's Objection (Doc. 28).

**I.    Background**

Plaintiff filed a Title II application for disability insurance benefits and a Title XVI application for Supplemental Security Income on August 29, 2016 and February 14, 2017, respectively, alleging disability beginning October 31, 2012, due to congestive heart failure, chronic obstructive pulmonary disease ("COPD"), asthma, overactive bladder, depression, anxiety, sleep apnea, stroke, mild cognitive impairment with memory loss, and chronic back pain.  (AR 53-54, 63-64, 190-205.)  Plaintiff later amended her alleged disability onset date to December 22, 2014, the date of her hospital

1   admission for a potential stroke.  (AR 34.)  Plaintiff's claims were denied initially and on

2   reconsideration.  (AR 73-76.)  On April 24, 2019, Administrative Law Judge ("ALJ")

3   Peter J. Baum held a hearing at which Plaintiff and vocational expert Jeff Komar

4   testified.  (AR 30-52.)  On August 15, 2019, the ALJ issued a decision finding Plaintiff

5   non-disabled.  (AR 13-24.)

6        A five-step sequential process is used to evaluate Social Security disability claims.

7   20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  At step one, the ALJ must determine if a

8   claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled.

9   20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  At the second step, the ALJ must

10  determine whether the claimant has a "severe medically determinable physical or mental

11  impairment" or combination of impairments that has lasted or is expected to last for a

12  continuous period of at least 12 months; if not, the claimant is not disabled.  20 C.F.R. §§

13  404.1520(a)(4)(ii), 416.920(a)(4)(ii); *see also* 20 C.F.R. §§ 404.1509, 416.909.  At the

14  third step, the ALJ must determine if the claimant's impairments meet or equal that of a

15  listed impairment; if so, the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(iii),

16  416.920(a)(4)(iii).  At the fourth step, the ALJ must determine whether, based on the

17  claimant's residual functional capacity, the claimant can perform his or her past relevant

18  work; if so, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv),

19  416.920(a)(4)(iv).  At the fifth step, the ALJ must determine whether, based on the

20  claimant's residual functional capacity, age, education, and work experience, the claimant

21  can make an adjustment to other jobs existing in significant numbers in the national

22  economy; if so, the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(v),

23  416.920(a)(4)(v); *see also* 20 C.F.R. §§ 404.1560(c), 416.960(c).

24       Here, the ALJ found at step one that Plaintiff had not engaged in substantial

25  gainful activity since her alleged disability onset date of December 22, 2014.  (AR 16.)

26  At step two, the ALJ found that Plaintiff has the following severe medically determinable

27  impairments: congestive heart failure, COPD, and obesity.  (AR 16-17.)  At step three,

28  the ALJ found that Plaintiff's impairments do not meet or equal that of a listed

impairment.  (AR 17-18.)  At step four, the ALJ found that Plaintiff has the residual functional capacity to perform the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a).  (AR 18-21.)  Specifically, the ALJ found that Plaintiff can lift, carry, push, and/or pull 10 pounds occasionally and less than 10 pounds frequently; can stand and/or walk 4 hours in an 8-hour workday; can sit 6 hours in an 8-hour workday; can occasionally climb ramps/stairs and never climb ladders, ropes, or scaffolds; can frequently balance and stoop; can never kneel, crouch, or crawl; and should avoid concentrated exposure to extreme cold and heat, fumes, odors, dusts, gases, poor ventilation, and hazards such as unprotected heights and moving machinery.  (AR 18.)  The ALJ found, based on this residual functional capacity, that Plaintiff is unable to perform her past relevant work as a convenience store clerk, convenience store manager, customer order clerk, customer service supervisor, or computer systems administrator.  (AR 21-22.)  However, at step five, the ALJ found that Plaintiff acquired skills from her past relevant work that are transferable to the occupation of data entry clerk, which is a job existing in significant numbers in the national economy that Plaintiff can perform given her residual functional capacity, age, and education.[1]  (AR 22-24.)  The Appeals Council denied review (AR 1-3), making the ALJ's decision the final decision of the Commissioner.

Plaintiff thereafter filed her Complaint in this action.  (Doc. 1.)  In her Opening Brief, she argues (1) that the "skills" the ALJ found to be transferable are not skills but merely tasks that can be learned in 30 days or less; and (2) that the ALJ failed to provide clear and convincing reasons for discounting her symptom testimony.  (Doc. 23 at 9-16.)  In his R&R, Magistrate Judge Ferraro finds that the ALJ (1) properly identified transferable skills and the occupation to which they could transfer; and (2) properly relied on inconsistencies with the medical evidence to discount Plaintiff's symptom testimony.  (Doc. 26 at 6-11.)

**II.    Standard of Review**

---

[1] Plaintiff was born in 1964 and has a high school diploma.  (AR 34-35.)

A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations" made by a magistrate judge. 28 U.S.C. § 636(b)(1). The district judge must "make a de novo determination of those portions" of the magistrate judge's "report or specified proposed findings or recommendations to which objection is made." *Id.* The advisory committee's notes to Rule 72(b) of the Federal Rules of Civil Procedure state that, "[w]hen no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" of a magistrate judge. Fed. R. Civ. P. 72(b) advisory committee's note to 1983 addition. *See also Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) ("If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error."); *Prior v. Ryan*, CV 10-225-TUC-RCC, 2012 WL 1344286, at *1 (D. Ariz. Apr. 18, 2012) (reviewing for clear error unobjected-to portions of Report and Recommendation).

The Court must affirm the Commissioner's decision if the decision "is supported by substantial evidence and based on the application of correct legal standards." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (per curiam). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). It "is more than a mere scintilla but less than a preponderance." *Id.* In determining whether the Commissioner's decision is supported by substantial evidence, the Court "must consider the record as a whole and weigh both the evidence that supports and the evidence that detracts from the ALJ's factual conclusions." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) (internal quotation marks omitted). When evidence "is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Court may consider "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (internal

quotation marks omitted).

Error in a social security determination is subject to harmless-error analysis. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). "[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (internal quotation marks omitted), *superseded by regulation on other grounds*.

## III.    Discussion

Plaintiff objects to the R&R's findings that the ALJ properly identified transferable skills and properly discounted Plaintiff's symptom testimony. (Doc. 27.) The Court addresses each objection in turn.

### A.    Transferrable Skills

At the administrative hearing, Plaintiff testified that she worked for Arizona Mail Order for three or four years, first as a clerk "on the phones" taking incoming calls, then as a trainer and supervisor. (AR 37, 45.) The ALJ classified this job as a customer order clerk (DOT code 249.362-026), a semi-skilled position, and customer service supervisor (DOT code 241.137-014), a skilled position. (AR 21.) Plaintiff provided a written description of the job as consisting of the following duties: wearing a wireless headset and walking the warehouse to assist call center clerks; hiring and conducting training classes; handling customer complaints; using machines, technical knowledge, and/or skills; and writing and completing reports. (AR 260.)

The vocational expert testified at the administrative hearing that an individual with Plaintiff's age, education, past relevant work experience, and residual functional capacity could work as a data entry clerk (DOT code 203.582-054), a semi-skilled position for which approximately 25,445 jobs exist in the national economy. (AR 23, 48-49.) In a post-hearing written rationale, the vocational expert opined that Plaintiff acquired skills in her prior employment as a customer order clerk that are sufficient to meet the demands of a data entry clerk without significant vocational adjustment. (AR 22, 300.)

Specifically, those skills are: "operation of computer and keyboard, entering information into computer, verifying accuracy of information inputted, editing/revising incorrect information, and keeping record of information entered."  (*Id.*)  The ALJ credited the vocational expert's testimony and found that Plaintiff can perform the work of a data entry clerk given her transferable skills.  (AR 22-24.)

The R&R finds that clerical skills such as keyboarding and entering information, as well as revising and organizing information, qualify as transferable skills.  (Doc. 26 at 8.)  In her Objection, Plaintiff argues that the relevant inquiry is whether she acquired transferable skills through the actual performance of her job as a customer order clerk, and there is no evidence that typing or data entry were more than incidental parts of her job.  (Doc. 27 at 2-3.)  She further argues that the vocational expert failed to identify transferable skills and instead identified only a collection of "tasks commonly performed by some order clerks but not necessarily performed by [Plaintiff]."  (*Id.* at 3.)  The Commissioner relies on its Answering Brief, in which it argues that Plaintiff gained computer and data-entry skills in her prior work that match the skills required for a data entry clerk position.  (Doc. 24 at 6-9; Doc. 28 at 2.)

A claimant is considered to have transferable skills "when the skilled or semi-skilled work activities [the claimant] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work."  20 C.F.R. § 404.1568(d)(1).  The determination "depends largely on the similarity of occupationally significant work activities among different jobs."  *Id.*  Transferability is most probable among jobs requiring the same or a lesser degree of skill; the same or similar tools and machines; and the same or similar raw materials, products, processes, or services.  *Id.* § 404.1568(d)(2).  "A complete similarity of all three factors is not necessary for transferability."  *Id.* § 404.1568(d)(3).

Social Security Ruling ("SSR") 82-41 defines a "skill" as "knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is

above the unskilled level," meaning it "requires more than 30 days to learn." *Titles II and XVI: Work Skills and their Transferability as Intended by the Expanded Vocational Factors Regulations Effective February 26, 1979*, SSR 82-41(2)(a) (1982), *available at* 1982 WL 31389.   For example, "making precise measurements" is a skill.   *Id.* "Transferability means applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semiskilled jobs."   SSR 82-41(2)(b).   As an example, "a semiskilled general office clerk" is ordinarily "proficient in, and spends considerable time doing, typing, filing, tabulating and posting data in record books, preparing invoices and statements, [and] operating adding and calculating machines," which are skills that "may be readily transferable to such semiskilled sedentary occupations as typist, clerk-typist and insurance auditing control clerk."   SSR 82-41(d).

Based on 20 C.F.R. § 404.1568 and SSR 82-41, the Court agrees with the R&R that skills such as typing, data entry, and revising and organizing information qualify as transferable skills.   The Court also agrees that such skills transfer to the job of data entry clerk (DOT code 203.582-054), which requires operating a keyboard to enter data into a computer and confirming the accuracy of the data entered.

However, the Court disagrees that substantial evidence supports the ALJ's finding that Plaintiff acquired transferable skills through her past relevant work as a customer order clerk.   Plaintiff's written description of her work at Arizona Mail Order appears to focus on her later job as a customer service supervisor rather than her initial work as a customer order clerk.   (*See* AR 260.)   Her testimony from the hearing before the ALJ indicates only that her job as a customer order clerk involved processing orders received from customers by telephone.   (AR 37, 45.)   It is not clear from the record the degree to which Plaintiff engaged in typing, data entry, and revising and organizing information in her position as a customer order clerk.   One could assume that Plaintiff used typing and data entry skills in order to process customers' orders, but an ALJ's decision must be supported by substantial evidence rather than mere assumptions.   At step five of the

sequential evaluation process, the Commissioner bears the burden of producing evidence showing that the claimant can perform work that exists in substantial numbers in the national economy.   20 C.F.R. §§ 404.1512(b)(3), 404.1560(c)(2), 416.912(b)(3), 416.960(c)(2).  Here, the ALJ did not sufficiently develop the record to support a finding that Plaintiff acquired transferrable skills through her work as a customer order clerk that allow her to perform a job that exists in substantial numbers in the national economy.

## B.    Symptom Testimony

Plaintiff reported being unable to "complete daily household chores as any physical exertion causes severe shortness of breath, dizziness and tingling and weakness in her legs."  (AR 248.)  She "sometimes does the dishes but needs frequent breaks." (*Id.*)  She reported "difficulty with her personal care," and "needing a shower chair" due to shortness of breath, dizziness, and weakness.  (*Id.*)  She needs to rest "frequently after walking very short distances," and "by the end of a trip to the grocery store," she "must sit and rest for the remainder of the day."  (*Id.*; *see also* AR 273-74.)  She "tends to stay at home" (AR 248) and "has difficulty socializing due to shortness of breath" (AR 273). At the hearing before the ALJ, Plaintiff testified that she had been using an oxygen tank for two years, and she had previously used one for a three-year period before temporarily losing her health insurance benefits.  (AR 39-40.)  She testified that she cannot perform her past work because she cannot talk for prolonged periods and has difficulty walking short distances.  (AR 41.)

The ALJ gave "little weight" to Plaintiff's allegations and testimony that her impairments preclude her from performing work-related activities, but he gave her the "benefit of the doubt with respect to her allegation that she tires easily if she talks to[o] long."  (AR 21.)  The ALJ noted that the record shows Plaintiff "received appropriate medical treatment but also failed to comply with smoking cessation."  (*Id.*)  The ALJ further noted that Plaintiff "is not dependent on others to perform her activities of daily living."  (*Id.*)  Finally, the ALJ found that "the degree of symptoms reported by [Plaintiff] is disproportionate to the objective medical evidence of record."  (AR 19.)  The ALJ

credited the determination of State agency medical consultant Melvyn Weinberg, M.D., that Plaintiff can perform sedentary work.  (AR 21.)

The R&R finds that the ALJ's statement regarding Plaintiff's daily activities is insufficient to discredit her testimony, because the statement is vague and inconsistent with the third-party function report of Plaintiff's daughter, Helene Lewton, which describes Plaintiff as needing assistance from others to prepare meals, provide transportation, and finish chores.  (Doc. 26 at 10.)  The R&R finds that there is a conflict in the case law within the Ninth Circuit regarding whether a claimant's failure to quit smoking should be considered in evaluating the claimant's credibility.  (*Id.* at 10-11.) However, the R&R finds that this Court need not settle the issue, because even if the ALJ erred in relying on Plaintiff's failure to quit smoking in discounting Plaintiff's testimony, the error was harmless because the ALJ properly rejected Plaintiff's testimony based on inconsistency with the medical evidence.  (*Id.* at 9-12.)

In her Objection, Plaintiff argues the ALJ could not permissibly reject her symptom testimony based solely on a lack of corroborating objective medical evidence. (Doc. 27 at 3-5.)  In response, the Commissioner argues that the ALJ relied on four reasons to discount Plaintiff's symptom testimony: her daily activities, her failure to stop smoking, inconsistency with the medical evidence, and inconsistency with the State agency medical consultant's determination.  (Doc. 28 at 2.)  Thus, the Commissioner argues that, even if this Court agrees with the R&R that the ALJ's statement regarding Plaintiff's daily activities is insufficient to discredit her testimony, and even if this Court finds that the ALJ's reference to Plaintiff's failure to quit smoking was also insufficient, two valid reasons for rejecting Plaintiff's symptom testimony remain.  (Doc. 28 at 2-3.) In her Reply Brief, Plaintiff argues that the ALJ never stated that the State agency medical consultant's determination was inconsistent with her symptom testimony, and that the mere existence of a contrary determination from a "state agency physician at the initial or reconsideration level of the case alone cannot constitute a clear and convincing reason to discount symptom testimony . . . because such opinions are present in virtually

every case." (Doc. 25 at 7.)

An ALJ must engage in a two-step analysis to "determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036 (internal quotation marks omitted); *see also* 20 C.F.R. § 404.1529(a) ("[t]here must be objective medical evidence from an acceptable medical source that shows" the claimant has an impairment that "could reasonably be expected to produce the pain or other symptoms alleged"). "Second, if the claimant meets this first test and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (internal quotation marks omitted).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms (AR 19), and the ALJ did not find evidence of malingering. Accordingly, the issue before the Court is whether the ALJ offered specific, clear and convincing reasons for rejecting Plaintiff's symptom testimony.

### 1.    Daily Activities

An ALJ may permissibly consider a claimant's daily living activities in determining whether to credit the claimant's statements concerning the intensity, persistence, and effect of her symptoms. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). "[I]f a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities." *Id.* However, "ALJs must be especially cautious in concluding that daily activities are inconsistent" with a claimant's symptom testimony, "because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more

than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

Here, the ALJ stated that Plaintiff "is not dependent on others to perform her activities of daily living." (AR 21.)  That statement does not make any specific findings relating to Plaintiff's daily activities, nor is it supported by the record.  As discussed above, Plaintiff reported significant limitations with her activities of daily living.  (*See, e.g.*, AR 248.)  Those reported limitations are consistent with the third-party function report submitted by Lewton.  (AR 251-57.)  Lewton reported that Plaintiff lives with her, is unable to drive, cannot walk to the bus stop, cannot stand for extended periods or easily get up from sitting, has difficulty bathing and showering, and is on constant supplemental oxygen during the day and CPAP at night.  (AR 251-52, 254.)  She also reported that Plaintiff can only walk 30-50 feet before needing to rest.  (AR 256.)  She stated that Plaintiff can fold laundry while sitting and that she does the dishes two to three times per week but is unable to dry the dishes and put them away.  (AR 253.)  Plaintiff prepares simple meals one to two times per week, can supervise Lewton's daughter for short periods of time, can take her boyfriend's dogs on walks of less than ten minutes, and can play fetch with the dogs while sitting.  (AR 252-53.)  Plaintiff can lift "very little" and climbing stairs involves "too much physical exertion" for her.  (AR 256.)  Lewton noted that not being independent "has hurt [Plaintiff] greatly."  (AR 257.)

The Court agrees with the R&R that the record does not support the ALJ's finding that Plaintiff can independently perform her activities of daily living.  To the contrary, the record indicates that Plaintiff is dependent upon others for daily activities including transportation, most of her meal preparation, and finishing chores.  The Court will adopt the R&R's finding that the ALJ's reference to Plaintiff's activities of daily living does not constitute a clear and convincing reason for discrediting Plaintiff's symptom testimony.

## 2.    Failure to Quit Smoking

"In some circumstances, a failure to seek treatment or a failure to follow a prescribed treatment is properly used as evidence supporting a conclusion that the

claimant is not credible in describing his or her symptoms." *Orn v. Astrue*, 495 F.3d 625, 637 (9th Cir. 2007); *see also Trevizo v. Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017) ("A claimant's subjective symptom testimony may be undermined by an unexplained, or inadequately explained, failure to follow a prescribed course of treatment." (internal quotation and alteration marks omitted)).  However, the Ninth Circuit has recognized that a claimant who continues smoking against medical advice may be "so addicted to cigarettes that she continue[s] smoking even in the face of debilitating shortness of breath and acute chemical sensitivity."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (finding that ALJ's reliance on a claimant's failure to quit smoking, "even if erroneous," amounted to harmless error where the ALJ presented other valid bases for discounting the claimant's symptom testimony); *see also Rivers v. Berryhill*, 732 Fed. App'x 511, 513 (9th Cir. 2018) (mem.) ("The ALJ's reliance on [the claimant's] continued smoking, despite doctors' warnings to the contrary, as a basis to discredit his credibility was harmless error.").

Here, the record reveals that Plaintiff made attempts to reduce her cigarette intake but did not successfully quit smoking.  (*See, e.g.*, AR 312, 483, 537, 591-92.)  Given the highly addictive nature of cigarettes, the Court finds that the ALJ erred in discrediting Plaintiff's symptom testimony based on her failure to quit smoking, particularly where the record contains evidence of Plaintiff's efforts to reduce her cigarette intake.

### 3.   State Agency Medical Consultant's Determination

At the reconsideration level, State agency medical consultant Dr. Weinberg determined that Plaintiff has the residual functional capacity to perform sedentary work.  (AR 87-91.)  The ALJ adopted Dr. Weinberg's determination, finding it to be "consistent with the medical evidence as a whole and the testimony."  (AR 21.)

The Commissioner asserts that the ALJ relied on inconsistencies with Dr. Weinberg's determination as a basis for discounting Plaintiff's symptom testimony.  (Doc. 28 at 2-3.)  However, the ALJ never specifically did so.  *See Revels*, 874 F.3d at 654 (a court "may not affirm the ALJ on a ground upon which he did not rely").  The

ALJ credited Dr. Weinberg's determination, but he never stated that he relied on inconsistencies between Plaintiff's symptom testimony and Dr. Weinberg's determination as a basis for discounting Plaintiff's symptom testimony.  Even if the ALJ had done so, the Court agrees with Plaintiff that inconsistency with the determination of a State agency medical consultant at the initial or reconsideration level cannot constitute a clear and convincing reason for an ALJ to discount a claimant's symptom testimony, as such inconsistencies exist in virtually every case.

### 4.    Medical Evidence

Finally, the ALJ found that the degree of symptoms reported by Plaintiff "is disproportionate to the objective medical evidence of record."  (AR 19.)  The ALJ then summarized medical records documenting diagnostic tests and treatment for COPD and congestive heart failure.  (AR 19-20.)  The ALJ discussed records from a March 17, 2017 emergency department visit indicating Plaintiff was "able to speak in full sentences," finding the notation inconsistent with Plaintiff's testimony that she is unable to speak for prolonged periods.  (AR 20.)  The ALJ also referred to a pulmonary test in which Plaintiff walked 262 meters in six minutes with no significant oxygen desaturation.  (*Id.*)

Once a claimant has shown that she has a medically determinable impairment or impairments that could reasonably be expected to produce her pain or other symptoms, her statements about the intensity, persistence, and effect of her pain or other symptoms cannot be rejected "solely because the available objective medical evidence does not substantiate" them.  20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); *see also Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991) (an ALJ "may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence").

Here, the other reasons provided by the ALJ for discounting Plaintiff's symptom testimony are invalid, and the ALJ's finding that the degree of symptoms reported by Plaintiff is not corroborated by the objective medical evidence is insufficient, standing on its own, to constitute a clear and convincing reason for discounting Plaintiff's symptom

testimony.  *See* 20 C.F.R. § 404.1529(c)(2).  Accordingly, the Court finds that the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms.

### C.    Credit-As-True

A social security case should be remanded "if additional proceedings can remedy defects in the original administrative proceeding."  *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (internal citation and alteration marks omitted).  However, in certain circumstances, a court may "reverse and remand" for an award of benefits rather than a rehearing.  *Id.*; *see also* 42 U.S.C. § 405(g) (a court may reverse the decision of the Commissioner "with or without remanding the cause for a rehearing").  Under the "credit-as-true" rule, "where there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits" if improperly disregarded testimony were credited, a court "will not remand solely to allow the ALJ to make specific findings regarding that testimony" but instead will credit the testimony as true.  *Garrison*, 759 F.3d at 1019 (internal quotation marks omitted).

A court will remand for an award of benefits "only in rare circumstances . . . where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed."  *Treichler v. Comm'r of Soc. Sec. Admin*, 775 F.3d 1090, 1100 (9th Cir. 2014).  Remanding for further administrative proceedings is required "[w]here there is conflicting evidence" and "not all essential factual issues have been resolved."  *Id.* at 1101.  If "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled," remand for further administrative proceedings is required even if all conditions of the credit-as-true rule are satisfied.  *Garrison*, 759 F.3d at 1021.

Here, no physician opined that Plaintiff has disabling limitations, and the medical records indicate Plaintiff's COPD and congestive heart failure are stable with treatment. The Court finds that remand is appropriate to allow the ALJ to (1) reconsider Plaintiff's

residual functional capacity in light of her symptom testimony, and (2) further develop the record regarding the skills Plaintiff acquired in her prior job as a customer order clerk.

**IT IS ORDERED** that Plaintiff's Objection (Doc. 27) is **partially granted**, as set forth above.

**IT IS FURTHER ORDERED** that Magistrate Judge Ferraro's Report and Recommendation (Doc. 26) is **partially accepted and partially rejected**, as set forth above.

**IT IS FURTHER ORDERED** that the final decision of the Commissioner of Social Security is **reversed**, and this case is **remanded** to the Commissioner for further proceedings consistent with this decision.   The Clerk of Court is directed to enter judgment accordingly and close this case.

Dated this 25th day of March, 2022.

_____
Honorable Rosemary Márquez
United States District Judge